Jennifer J. Middleton, OSB No. 071510
jmiddleton@justicelawyers.com
Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
JOHNSON, JOHNSON, LUCAS & MIDDLETON, PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Telephone: (541) 484-2434
Facsimile:  (541) 484-0882
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **K.F. and ROBERTA FAST,** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**BAKER SCHOOL DISTRICT 5J,** )<br>)<br>**Defendant**. )<br>)<br>)<br>) | Case No.:<br><br>**COMPLAINT**<br><br><u>Demand for Jury Trial</u> |

## INTRODUCTORY STATEMENT

### 1.

Baker High School retained its girls' varsity volleyball coach, Warren Wilson, after the Baker School District 5J reported him to the Teacher Standards and Practices Commission (TSPC) for predatory, grooming-type behaviors, he admitted to the behaviors, and the TSPC suspended his teaching license. During the months that Warren's teaching license was suspended for conduct that he undertook as a coach, Baker High School kept him on as a coach. He continued to engage in the same kinds of behaviors toward Plaintiff K.F. and others. She

Page 1 - **COMPLAINT**

reported them to the junior varsity coach, the Athletic Director, the Vice Principal, and the

Principal of Baker High School. None took effective corrective action or alerted the District's

Title IX officer.

## 2.

K.F. and her mother, Plaintiff Roberta Fast, were forced to escalate their concerns to the

Superintendent of the District. The Superintendent initiated an investigation that resulted in

termination of Coach Wilson. Administrators and students at Baker High School then retaliated

against K.F. and Roberta Fast for reporting Coach Wilson's unwanted sexual conduct and other

concerns.

## 3.

This is an action under Title IX of the Education Amendments of 1972, the First

Amendment of the United States Constitution, and ORS 659.852 for unlawful retaliation against

K.F. and Roberta Fast because they reported in good faith violations of Title IX and state anti-

discrimination laws, and expressed other concerns about Coach Wilson and the school's

treatment of K.F.

## JURISDICTION & VENUE

## 4.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is

proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

## 5.

K.F. is a student at Baker High School in Baker City, Oregon. She is an avid volleyball

player and a member of the class of 2021, currently a junior.

**6.**

Roberta Fast is K.F.'s mother and legal guardian.

**7.**

Baker School District 5J is the public school district in Baker City, Oregon, serving approximately 1700 students. Baker High School is one of two high schools in the district.

**FACTS**

**8.**

K.F. has been playing volleyball since she was in third grade on teams based at her Baker City schools, at the YMCA and in club sports. She has attended multiple skills camps at higher education facilities on summer breaks. She is a passionate and committed player who hopes to play through college and beyond. She would like to become a professional volleyball coach.

**9.**

In or around August 2015, when K.F. was in seventh grade, Baker City High School volleyball coach Warren Wilson ("Coach Wilson") asked K.F. to play with the high school volleyball players during open gyms at the high school. She began playing and practicing with the junior varsity (JV) and varsity players and felt that Coach Wilson was seeking her out.

**10.**

Also in August 2015, Baker School District 5J made a report to the Oregon Teacher Standards and Practices Commission (TSPC) alleging that Coach Wilson violated teacher/student boundaries in his role as the coach of the girls' junior varsity basketball team in 2014.

///

///

Page 3 - **COMPLAINT**

**11.**

In August 2017, K.F. started ninth grade at Baker City High School. Coach Wilson placed her on the JV volleyball team as a setter starter. She was one of only two freshman on the JV team (rather than JV2) and the only starter freshman.

**12.**

K.F. noticed conduct by Coach Wilson that made her uncomfortable. He touched her and other girls on the team, put his arm around them, stood too close, put his hands on their hips and lower backs and moved them about, and held onto their hands when talking to them.

**13.**

In November 2017, the TSPC issued a finding of gross neglect of duty against Coach Wilson. Coach Wilson agreed to the TSPC stipulated findings. Those stipulated findings reiterated the school district's conclusion that Wilson "exhibited a pattern of behaviors that made student athletes feel uncomfortable. Wilson's behaviors included the following:  sitting too close, placing his arm around students, touching their hair, lower backs and earlobes, speaking to them about personal issues, and massaging and stretching students in isolation. . . . Wilson's conduct resembles grooming behaviors and could be considered harassment in violation of district policies."

**14.**

The TSPC Final Order suspended Coach Wilson's Oregon educator license for 60 days and imposed a two-year period of probation. It went into effect November 9, 2017.

**15.**

K.F. and Roberta Fast knew nothing about the TSPC Order. The Baker School District allowed Coach Wilson to continue coaching throughout the period of his suspended teaching

license even though the findings of gross neglect of duty all involved Wilson's conduct as a coach.

**16.**

At the start of the 2018 season, Coach Wilson told K.F. she would play "swinging up to varsity," that she would dress for every game, play at least one set in every varsity game and earn a varsity letter. She appeared on the varsity roster with more positions listed behind her name than any other player.

**17.**

In August 2018, K.F. had an asthma attack at a practice. Instead of allowing her to retrieve her inhaler, Coach Wilson pinned K.F. against the wall holding her hands above her head and petted her face. It was scary, creepy, and dangerous. Eventually another player had to retrieve her inhaler and provide it to her while Coach Wilson kept her pinned to the wall.

**18.**

After that experience, and after noticing that Coach Wilson was overly touchy with her and other girls, K.F. made an effort to create distance from Coach Wilson. She backed away when he stood close, tried to find a time when his hands were full to talk to him, or made sure to stand several people away from him in a huddle.

**19.**

As K.F. created more distance with Coach Wilson, he became colder to her. He had previously been very involved with her, including checking in with her about her father who had died recently. Now he ignored her questions and no longer asked how she was doing. He did not play her in the first varsity game.

///

**20.**

In September 2018, K.F. and Roberta Fast reported to Athletic Director Tim Smith that they had concerns about Wilson. These included, but were not limited to, his excessive and unwanted touching of girls on the team.

**21.**

Athletic Director Smith was unresponsive to the Fasts' reports. He took no effective corrective action. On September 24, 2018, K.F. and Roberta Fast requested a meeting with Vice Principal Chelsea Hurliman to pursue their concerns.

**22.**

When K.F. and Roberta Fast arrived to meet with Hurliman, they were surprised to see that she had invited Athletic Director Smith to the meeting, as well as Principal Greg Mitchel. They felt ambushed. Even so, they reported Wilson's unwanted touching and other sexual harassment. School district policies require staff to report any such complaints to the Title IX officer, but no Title IX officer followed up with K.F. and Roberta Fast and they were not told to make a report to him.

**23**.

K.F. was not the only volleyball player to report concerns about Coach Wilson's conduct to Vice Principal Hurliman.

**24.**

For the next few weeks, Athletic Director Smith let Coach Wilson know that he and/or Principal Mitchel would visit games and practices and the times when they would be there. When one of them was there, Coach Wilson kept his hands to himself. When not there, Coach Wilson resumed his excessive and unwanted touching and other conduct of the sort described in

the TSPC order. During this time, Coach Wilson stopped playing K.F. in the varsity games until the last few minutes or did not play her at all.

**25.**

In October 2018, the school district permitted Wilson to be the sole chaperone with the girls' volleyball team during their transport to the State tournament in Portland. The district allowed this despite the TSPC findings and the reports of K.F. and others about his conduct.

**26.**

By January 2019, K.F. and Roberta Fast had received no information about any response to their reports, but they knew that the school district intended to keep Wilson as the coach. Roberta Fast went to Superintendent Mark Witty. This time, Superintendent Witty involved Barry Nemec, the district's Title IX officer, and the two of them met with K.F. and Roberta Fast. Witty and Nemec initiated an investigation.

**27.**

An outside investigator interviewed athletes. K.F. was interviewed on or about February 23, 2019. On February 25, two days later, the school district announced that Coach Wilson was being terminated immediately.

**28.**

Coach Wilson was also a specialty coach for the boys' baseball team, alongside Athletic Director (AD) Smith, who was the head coach. AD Smith was emotional and tearful when he told the baseball team that Wilson would no longer be their coach. When asked why, he told the players that they should ask K.F.

///

///

**29.**

That same day, members of the baseball team and former players began a campaign of harassment against K.F. She was bullied, physically intimidated, and ridiculed in social media and in person at school. The school district knew that K.F. was being harassed, but undertook no investigation to determine how the players knew that K.F. had reported Coach Wilson.

**30.**

On or about March 19, 2019, the School Board discussed Coach Wilson's termination at an open School Board meeting. AD Smith's wife, Molly Smith, and Gary Carter, a community member, spoke out against the termination. Commenters suggested that reports against Wilson came from disgruntled players upset by not getting enough playing time. Board Chair Hawkins noted that "we're in a pretty small community" and expressed concern about "retributions" against those interviewed by the investigator. The Board authorized an audit of district policies and practices related to hiring, background checks, handling of complaints and sexual harassment.

**31.**

On or about March 20, 2019, Roberta Fast wrote a letter to the Oregon Teacher Standards and Practices Commission detailing these events and expressing concerns about retaliation against K.F.

**32.**

In April 2019, Principal Mitchel confronted K.F. in the high school commons, where she was studying during her free second period. He said to her aggressively, "if you have something to say to me, just say it." She responded that she had reported many things to him, but he had not proven to be a good listener. Roberta Fast met with Principal Mitchel to address the

confrontation. She asked Principal Mitchel to investigate how members of the baseball team

knew that K.F. had reported Coach Wilson. She received no response.

**33.**

On or about May 31, 2019, Superintendent Witty removed Tim Smith as Athletic

Director, based on the audit conducted by the district's lawyers. Superintendent Witty detailed

several of the audit's findings to the Baker City Herald, including that administrators need more

training regarding Title IX and its recommendation that the Board designate a single Title IX

officer, among other advice.

**34.**

In Spring 2019, the school district advertised for a new girls' volleyball coach. One of the

applicants, Kaycie Kitzmiller, was highly qualified. The other applicant, Vice Principal Chelsea

Hurliman, had very little volleyball experience. Hurliman also had not taken effective corrective

action toward Wilson despite Fast's reports. Principal Mitchel hired Hurliman.

**35.**

Roberta Fast spoke separately with Principal Mitchel, School Board member Julie

Huntington, and Vice Principal Hurliman and expressed to each of them her concern that they

had not selected the most qualified candidate for the position. She described the impact on the

athletes of having an unqualified coach and the potential for retaliation against K.F.

**36.**

In late August 2019, K.F. tried out for the girls' volleyball  team. It was the start of her

junior year. Coach Hurliman said she would select varsity players based on a set of rubrics to

ensure it was a fair process.

///

**37.**

K.F. completed the rubrics required by Coach Hurliman for the tryouts with results near the top of the team. She asked the Junior Varsity coach, Sonny Gulick, what she could improve, and he said there was nothing she could improve.

**38.**

When the teams were announced, Coach Hurliman had cut K.F. from the varsity team. Every other player who had worn the varsity jersey the year before, as K.F. had, was on the varsity team except K.F. Other players and other coaches were shocked because she was one of the best players and deserved to play varsity. Another Junior who had a back fracture and was unable to try out was placed on the varsity team.

**39.**

K.F. was crushed. She told Coach Hurliman that she would play on the junior varsity team but she asked for an explanation about what she could do better to qualify for varsity. Coach Hurliman was unable to give her an explanation. When K.F. pointed out that she did better on the rubrics than several of the players who made varsity, Coach Hurliman said, "well, that's your opinion." She made no effort to encourage K.F. to play. K.F. decided she could not continue.

**40.**

The next day, Roberta Fast contacted new Athletic Director Gonzalez. She said that the decision not to place K.F. on the varsity team was retaliatory for their complaints against Coach Wilson that resulted in Wilson being fired and then AD Smith being removed. Gonzalez undertook no investigation into Roberta Fast's report of further retaliation.

**41.**

As a result of the school district's retaliation, K.F. has experienced emotional distress which has, on some occasions, caused her to miss school. She lost the opportunity to letter in the sport that she has worked at since she was small. Because she is not on the volleyball team, she has lost opportunities for recruitment by college scouts. She has lost her core social group. She has been denied full and equal educational opportunities.

**42.**

As a result of the school district's retaliation, Roberta Fast has been denied the benefit of speaking freely on matters of public concern without fear of retaliation against her child. Defendant inflicted emotional injury on Roberta Fast through K.F. in order to punish Roberta Fast for her advocacy, reports, and criticism on matters of public concern.

**FIRST CLAIM FOR RELIEF**
Retaliation in Violation of Title IX of the Education Amendments of 1972

Plaintiffs incorporate paragraphs 1-42 as though fully restated here.

**43.**

Defendant receives federal funds within the meaning of Title IX.

**44.**

By publicizing the fact that K.F. reported sexual harassment by Coach Wilson, subjecting K.F. to harassment and ostracization, and ensuring that she would not play varsity volleyball, Defendant retaliated against K.F. and Roberta Fast for their reports of sex discrimination in violation of Title IX of the Education Amendments of 1972.

///

///

**45.**

As a result of Defendant's retaliation, K.F. has been denied full and equal educational opportunities and has suffered emotional distress and loss of opportunity for her future. These losses are in amounts to be determined by a jury at trial.

**46.**

As a result of Defendant's retaliation, Roberta Fast has suffered sleeplessness, worry, sadness, and other emotional distress in amounts to be determined by a jury at trial.

**47.**

Defendant's actions were taken intentionally and/or in reckless disregard for plaintiffs' rights, and punitive damages should be awarded to deter similar conduct in the future.

**48.**

Plaintiffs are further entitled to their reasonable attorney fees and costs in pursuing this action.

**SECOND CLAIM FOR RELIEF**
Retaliation for Exercising First Amendment Rights, 42 U.S.C. § 1983

Plaintiffs incorporate paragraphs 1-48 as though fully restated here.

**49.**

By their reports about Coach Wilson' sexual harassment and their continued expressions of concern about Coach Wilson's conduct and about the selection of Coach Hurliman, Roberta and K.F. spoke out on matters of public concern.

**50.**

By publicizing the fact that K.F. reported sexual harassment by Coach Wilson, subjecting K.F. to harassment and ostracization, ensuring that she would not play varsity volleyball, and failing to investigate reports of retaliation, among other actions, Defendant retaliated against K.F.

and Roberta Fast for their expressions on matters of public concern. This retaliation occurred in violation of the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983.

**51.**

Defendant's retaliation would chill a person of ordinary firmness from engaging in constitutionally-protected conduct.

**52.**

Defendant's retaliation occurred pursuant to a policy or custom of the school district that does not prohibit retaliation for protected conduct, tolerates it, and fails to investigate reports of retaliation or to discipline wrongdoers, thereby ratifying it.

**53.**

As a result of Defendant's retaliation, K.F. has been denied full and equal educational opportunities and has suffered emotional distress and loss of opportunity for her future. These losses are in amounts to be determined by a jury at trial.

**54.**

As a result of Defendant's retaliation, Roberta Fast has suffered sleeplessness, worry, sadness, and other emotional distress in amounts to be determined by a jury at trial.

**55.**

Plaintiffs are further entitled to their reasonable attorney fees and costs in pursuing this action.

**THIRD CLAIM FOR RELIEF**
Retaliation in Violation of ORS 659.852

Plaintiffs incorporate paragraphs 1-55 as though fully restated here.

///

Page 13 - **COMPLAINT**

**56.**

By publicizing the fact that K.F. reported sexual harassment by Coach Wilson, subjecting K.F. to harassment and ostracization, and ensuring that she would not play varsity volleyball, among other actions and inactions, Defendant retaliated against K.F.. This retaliation occurred because K.F. in good faith reported information that she believed was evidence of a violation of state and federal laws, rules and regulations.

**57.**

Defendants' retaliation denied K.F. academic opportunities, excluded her from extracurricular activities, and subjected her to harassment that substantially disadvantaged her in academic and extracurricular activities, in violation of ORS 659.852.

**58.**

As a result of Defendant's retaliation, K.F. has been denied full and equal educational opportunities and has suffered emotional distress and loss of opportunity for her future. These losses are in amounts to be determined by a jury at trial.

**59.**

Plaintiffs are further entitled to their reasonable attorney fees and costs in pursuing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

(a)     An Order enjoining Defendant, its agents, employees, and those acting in concert therewith, from unlawful retaliation because of reports of discrimination on the basis of sex, including the failure to address, prevent, and/or remedy sexual harassment, and because of speech on matters of public concern;

(b)     Injunctive relief requiring Defendant to redress its violations of Title IX, including adopting and enforcing, with the assistance of outside experts, a comprehensive anti-retaliation policy, including procedures for effective reporting, requirements for investigating reports, and disciplinary consequences for retaliation; and providing for an annual, independent review by the Superintendent, with the participation of outside reviewers, of Athletic Department compliance with the sexual harassment and anti-retaliation policies.

(c)     An award of damages against Defendant in an amount to be established at trial, including, without limitation, damages for deprivation of equal access to the educational benefits and opportunities provided by Defendant; damages for loss of future opportunities including college recruitment; and damages for past, present, and future emotional pain and suffering, ongoing mental anguish, and loss of past, present, and future enjoyment of life;

(d)     An award of punitive damages in an amount sufficient to deter future violations;

(e)     An award of pre- and post-judgment interest;

(f)     An award of costs and attorney fees, pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885; and

(g)     Such other relief as is just and equitable.

///

///

///

///

///

///

///

Page 15 - **COMPLAINT**

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


DATED this 28th  day of April, 2020.

JOHNSON JOHNSON LUCAS & MIDDLETON, P.C.


/s/Jennifer J. Middleton

Jennifer J. Middleton, OSB No. 071510
jmiddleton@justicelawyers.com
Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
975 Oak St., Suite 1050
Eugene, OR 97401
Telephone: (541) 484-2434
Facsimile:  (541) 484-0882
Attorneys for Plaintiffs