IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**K.F. AND ROBERTA FAST**,

    Plaintiffs,

  v.

**BAKER SCHOOL DISTRICT 5J**,

    Defendant.

Case No. 2:20-cv-00693-IM

**OPINION AND ORDER**

Caitlin Van Tassel Mitchell & Jennifer J. Middleton, Johnson, Johnson, Lucas & Middleton, PC, 975 Oak Street, Suite 1050, Eugene, OR 97401-3124. Attorneys for Plaintiffs.

Rebekah R. Jacobson, Garrett Hemann Robertson, 1011 Commercial St. NE, Salem, OR 97301-0479. Attorney for Defendant.

**IMMERGUT, District Judge.**

      This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents. ECF 20. Plaintiffs seek an order compelling Defendant to produce the report produced from its 2019 audit of district policies, practices, and implementation of policies regarding hiring and handling of complaints in athletics. *Id*. at 1. Plaintiffs also seek the underlying investigatory materials, notes, interviews and drafts of that report. *Id*. at 1–2. This Court held a hearing on this Motion on March 5, 2021.

PAGE 1 – OPINION AND ORDER

This Court finds that the attorney client privilege attached and was partly waived by extrajudicial disclosure, but that fairness does not require further disclosure. Because this Court finds that the attorney client privilege continues to apply to the non-disclosed materials, this Court need not determine whether the work product doctrine privilege also protects those materials.

## BACKGROUND

Plaintiffs allege retaliation against a high school volleyball player, K.F., after she reported to the District unwanted touching by her volleyball coach, Warren Wilson. *See* ECF 1 at ¶¶ 42–59.

The facts relevant to this Motion are as follows. K.F. reported inappropriate touching by Wilson, and Defendant initiated an investigation on January 29, 2019. *See* ECF 1 at ¶¶ 26–27; ECF 6 at ¶¶ 26–27. On February 25, 2019, the school district announced that Wilson was being terminated immediately. ECF 1 at ¶ 27.[1] The decision to terminate was not well-received by some members of the school community. At a March 19, 2019, special board meeting, members of the community expressed concerns about how the "complaint" process was handled. ECF 21-1 at 1–3 (March 19, 2019, board meeting public comments and discussion); *see also* ECF 25 at 2–3. As a result of these concerns, the Board agreed to "confer[] with OSBA on the process of an internal audit on District procedures." ECF 21-1 at 3; ECF 25 at 2–3. Defendant hired J. Hank Stebbins, an attorney with Garrett Hemann and Robertson, to conduct the audit. ECF 20 at 3; ECF 21-4 at 2; ECF 25 at 3.

---

[1] Defendant denies this allegation in its Answer. ECF 6 at ¶ 27. In its Response to Plaintiffs' Motion, Defendant states that it "investigated the complaints against Mr. Wilson and ultimately decided to take action to terminate him from his extra-duty roles . . . ." ECF 25 at 2.

After the audit was completed, the board held a special meeting on May 14, 2019, which was attended by a reporter with the Baker City Herald and transcribed. ECF 21-3 at 1. At this meeting, Superintendent Mark Witty publicly discussed three of the audit's high-level recommendations. Witty began his discussion by noting that his "role is to make a recommendation to the board." *Id.* at 3. He then discussed the audit report, explaining "that report at a very high level has some key things that I think that we want to make sure the board is, you know, cognizant of and the greater community." *Id.*

Witty first stated, "One, from a Title IX perspective, that report essentially is making the argument, and I happen to agree, that we need more Title IX training for our district administrators, our administrators for sure, and potentially others. . . . [A]nd I personally strongly agree with that recommendation." *Id.* at 3–4. Witty later discussed "another high-level recommendation" "that instead of having multiple people," there is "one individual that is really trained up to know exactly how to operate this." *Id.* at 7. Witty noted that he "would personally think that the Title IX coordinator" could be that "designated person" "based off of this recommendation." *Id.* at 8. Witty then stated, "[t]hen the third piece is at a high level the recommendation is to—and I would follow suit because I think this is a good idea—move this athletic position . . . to a much higher capacity with more authority." *Id.* at 8–9.

On June 3, 2019, the Baker City Herald made a public records request pursuant to Oregon's public records law for the report. ECF 21-5 at 1. The request was denied by Baker 5J School District, and the Herald appealed. *Id.* Reviewing the appeal and applying Oregon law,[2]

---

[2] Baker County District Attorney Matthew Shirtcliff upheld non-disclosure of portions of the report based on public records exemptions that do not apply here. *See Brown v. State Dep't of Corr.*, 173 F.R.D. 262, 264 (D. Or. 1997) (holding that Oregon public records law "is not a statute that creates an evidentiary privilege exempting these documents from discovery. Rather, [it] is a public records law that creates an exception to the rule that every person has a right to

PAGE 3 – OPINION AND ORDER

Baker County District Attorney Matthew Shirtcliff found that "all aspects of the record requested are exempt from disclosure except for the policies and procedures . . . as well as the Baker High School Coach/Advisor Handbook." *Id*. at 2.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Pre-trial discovery is "accorded a broad and liberal treatment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (internal quotation marks omitted).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Id*. (citing *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997)). No bright-line rule governs the applicability of the attorney-client privilege. *Upjohn*, 449 U.S. at 396–97. Rather, courts should apply the privilege on a case-by-case basis. *Id*. (citations omitted).

Applying federal common law,[3] the Ninth Circuit utilizes an eight-part test to determine whether information is protected under attorney-client privilege:

---

inspect the records of any public body." It therefore "does not limit the broad discovery authorized by Fed. R. Civ. P. 26(b)(1).").

[3] The parties agree that federal common law governs questions of attorney-client and work product privilege in this case. ECF 20 at 4–5; ECF 25 at 3; *see also United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client [or attorney], (6) are at his [or her] instance permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607 (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992). The party asserting the privilege bears the burden of proving each element. *Id*. at 608.

## DISCUSSION

Plaintiffs argue that Defendant waived the privilege through the discussion of the audit's recommendations at a public meeting.[4]

### A. Waiver of Attorney-Client Privilege by Disclosure at Public Meeting

#### 1. Waiver Occurred

Superintendent Witty voluntarily disclosed recommendations of the audit in the public May 14, 2019, special school board meeting and in disclosures to the Baker City Herald. Accordingly, Plaintiffs argue that "[b]y disclosing at least some of the recommendations of the report, the District voluntarily waived any protection for all legal advice conveyed in the report." ECF 20 at 6. Defendant argues that Witty's language about what was "essentially" in the report does not disclose "whether the superintendent stated what was directly contained in the audit report or if he was simply stating his own interpretation based on his understanding of the situation." ECF 25 at 7 (emphasis omitted).

---

[4] Plaintiffs' briefing may suggest that they also argue Defendant never intended for the communications to remain confidential. *See* ECF 20 at 5; ECF 25 at 4–5. Plaintiffs' counsel clarified at the hearing that they do not mean to argue that there was no intention from the outset to keep materials confidential. Rather, Plaintiffs contend that at the public meeting, Superintendent Witty, as evidenced by his statements, no longer intended the findings to be confidential. Plaintiffs do not argue any other element of the privilege test, and the parties agree that the audit was conducted for the purpose of obtaining legal advice. *See* ECF 20 at 6; ECF 25 at 4–5.

PAGE 5 – OPINION AND ORDER

This Court finds that, contrary to Defendant's characterization, Superintendent Witty did directly disclose some aspects of the audit report at the public meeting on May 14, 2019. Witty began by stating that the audit report "at a very high level has some key things that I think we want to make sure the board is, you know, cognizant of and the greater community." ECF 21-3 at 3. First, Witty explained that the "report essentially is making the argument, and I happen to agree, that we need more Title IX training . . . I personally strongly agree with that recommendation." *Id.* at 3–4. Witty stated that he "agrees" with the report on the Title IX training recommendation. This language shows that Witty is describing as distinct elements (1) the report's recommendation and (2) Witty's own opinion and recommendation based on the report's recommendation. Second, Witty noted "another high-level recommendation" "that instead of having multiple people," there is "one individual." *Id.* at 7. Witty stated that he "would personally think that our Title IX coordinator" could be that "designated person" "based off of this recommendation" *Id*. at 8. Again, Witty clearly distinguished between the report's recommendation and his own opinion and recommendation. Third, Witty stated, "[t]hen the third piece is at a high level the recommendation is to—and I would follow suit because I think this is a good idea—move this athletic position . . . to a much higher capacity with more authority." *Id*. at 8–9. Again, Witty distinguished between the report's recommendation and his opinion, and personal endorsement, of that recommendation.

These statements revealed at a public meeting three of the "high level" recommendations of the audit. As such, this disclosure consisted of "confidential portions of the privileged communications." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1123 n.9 (9th Cir. 2020) (quoting *Roberts v. Legacy Meridian Park Hosp., Inc*., 97 F. Supp. 3d 1245, 1253 (D. Or. 2015)) (distinguishing between "disclosing that certain subjects confidentially were discussed" and

PAGE 6 – OPINION AND ORDER

disclosing "confidential portions" of those discussions) (internal citations and quotation marks omitted). Accordingly, express waiver of the attorney client privilege occurred.

### 2. Scope of Waiver Is Limited

"Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). The "fairness principle [ ] animates the concept of subject matter waiver." *Sanmina Corp*., 968 F.3d at 1117.

Rule 502, which governs disclosures made in federal proceedings,[5] permits extension of a waiver "to an undisclosed communication or information" only if "they ought in fairness to be considered together." Fed. R. Evid. 502(a). While the Ninth Circuit has not explicitly stated whether Rule 502(a)'s "fairness balancing" is required in extrajudicial, express waiver situations like this one, the Federal Circuit, in a lengthy discussion of Ninth Circuit case law on this issue, predicted that the Ninth Circuit "would appreciate the heavy weight of current authority that comes down on the side of employing fairness considerations to decide the scope of waivers." *Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1373 (Fed. Cir. 2012). And recently, the Ninth Circuit affirmed that the "fairness principle also animates the concept of subject matter waiver," suggesting its applicability to express, extrajudicial disclosure as well. *Sanmina Corp*., 968 F.3d at 1117. Further, Plaintiffs assume that the fairness principle applies to their Motion. ECF 20 at 6 (discussing Fed. R. Evid. 502).

---

[5] Waiver by implication, or implied waiver, "is based on the rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Sanmina Corp*., 968 F.3d at 1117 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (quotation marks omitted). In contrast, express waiver "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Id*. at 1116–17 (quoting *Bittaker*, 331 F.3d at 719) (quotation marks omitted).

Plaintiffs argue that "[w]hatever was not disclosed in the public meeting is part of the same subject (a review of the District's implementation of its policies on complaints and hiring in athletics) and all of the material in the report ought to be considered together with the portions that Witty selectively disclosed." *Id*. at 6–7. However, while Plaintiffs reference the policy of disallowing selective disclosure to an adversary to help one's cause, they do not explain how Defendant is attempting such a maneuver in this case. *Id.* at 6 (discussing *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996)). The parties have already engaged in extensive discovery, including pursuant to a stipulated order for production. *See* ECF 16; ECF 17. Plaintiffs do not suggest that Defendant has behaved strategically in discovery. Rather, Plaintiffs' theory of unfairness focuses exclusively on the unfairness that might result from Witty's possibly incomplete statements at a public meeting. For its part, Defendant asserts that it has not put the requested materials "at issue in the case." ECF 25 at 7 n.1. At the hearing, Defendant affirmed that it will not rely on the requested materials in this legal proceeding.

In a case often cited by the Ninth Circuit on privilege issues, the Second Circuit explained:

> But where, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed. Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak. But related matters not so disclosed remain confidential. Although it is true that disclosures in the public arena may be "one-sided" or "misleading", **so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver**. The reason is that disclosures made in public rather than in court—even if selective—create no risk of *legal* prejudice until put at issue in the litigation by the privilege-holder. Therefore, insofar as the district court broadened petitioner's waiver to include related conversations on the same subject it was in error.

PAGE 8 – OPINION AND ORDER

*In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) (bold emphasis added and italics in original); *see also Bittaker*, 331 F.3d 715, 720 n.5 (9th Cir. 2003) (describing in dicta the trend toward finding only limited waivers) (citations omitted); *Wi-LAN*, 684 F.3d at 1370 (explaining that "the Ninth Circuit has several times cited *von Bulow* with approval" and finding "nothing in any of those cases to suggest that that court, though it approved of some aspects of *von Bulow*, nevertheless maintained a rule barring district courts from applying *von Bulow*'s central holding, fairness balancing, to cases of extrajudicial waiver").

This Court finds such reasoning persuasive and accordingly denies Plaintiffs' Motion to the extent it argues that Defendant's waiver extends "beyond those matters actually revealed." *In re von Bulow*, 828 F.2d at 103. Plaintiffs have not identified any unfairness that would arise in the litigation context due to this lack of further disclosure. Defendant affirmed at the hearing that it will not rely in any part on the requested materials in this litigation. Accordingly, this Court does not find that there is any "legal prejudice that warrants a broad court-imposed subject matter waiver," *id.*, which would reach beyond Witty's discussion of three high-level audit report recommendations to the rest of the report and its underlying materials. As this Court stated at the hearing on this Motion, to the extent that Defendant later seeks to rely upon the requested materials in this litigation, Plaintiffs may renew this Motion to Compel.

**B. Privilege Was Not Waived due to Prior Stipulated Order**

In this case, Defendant has already stipulated to an order for production that included Wilson's personnel file; investigations from 2015, 2018, and 2019; hiring files related to the head volleyball coach position in 2015, 2019, and 2020; relevant portions of C. Hurliman and T. Smith's personnel files; and student records (all subject to certain redactions). *See* ECF 16; ECF 17. Plaintiffs accordingly argue that any protection "on the basis of confidentiality of personnel

materials is therefore waived." ECF 20 at 7. Plaintiffs do not suggest that Defendant's production was selective or untoward in any way. This Court does not find that Defendant's voluntary disclosures made pursuant to the stipulated order constitute a privilege waiver as to all material in and underlying the audit report that is arguably related to that production. The Court declines to find the broad subject matter waiver suggested by Plaintiffs.

**C. Underlying Facts Provided for Purpose of Obtaining Legal Advice Remain Privileged**

The underlying factual material provided to the lawyer for audit purposes remains protected. The Ninth Circuit has declined the invitation to "distinguish between fact-finding and lawyering" in resolving privilege issues. *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996). The "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id*. at 1297 (quoting *Upjohn*, 449 U.S. at 390-91). This includes "a factual investigation by an attorney in connection with the provision of legal services to a client." *Keith v. Clatskanie People's Util. Dist.*, No. 3:13-CV-01332-ST, 2014 WL 2803452, at *3 (D. Or. June 18, 2014). The parties agree that the audit resulted in legal advice. *See* ECF 20 at 6; ECF 25 at 3-4. Accordingly, factual material provided to the lawyer conducting the audit for the purpose of "enabl[ing] him to give sound and informed advice," *Upjohn*, 449 U.S. at 390, remains privileged.[6]

---

[6] The Court acknowledges that Baker County District Attorney Shirtcliff found that Oregon public records laws required disclosure of "the policies and procedures regarding the hiring process, staff complaints procedures, sexual harassment procedures as well as the Baker High School Coach/Advisor Handbook." ECF 21-5 at 2. As Plaintiffs noted, this conclusion does not affect this Court's analysis. ECF 20 at 7 (citation omitted). Plaintiffs do not argue that Shirtcliff's order in some way prejudices Plaintiffs in the litigation context, but rather focus exclusively on whether prejudice was caused by Witty's statements at the public meeting.

PAGE 10 – OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel, ECF 20, is DENIED.

**IT IS SO ORDERED**.

DATED this 8th day of March, 2021.

                                                /s/ Karin J. Immergut
                                                Karin J. Immergut
                                                United States District Judge